May it please the court. My name is Daniel Kaplan. I represent the appellant Fortino Alvarez. I am going to watch the clock and try to save two minutes for rebuttal. The key evidence against my client, Fortino Alvarez, at his assault trial was the unsworn, out-of-court accusation of his girlfriend that was introduced through a tribal police officer at his trial, reading from his incident report. Now, my client, although he was not protected by the U.S. Constitution's Confrontation Clause, was protected by the Confrontation Clause of the Indian Civil Rights Act, which contains language which is identical verbatim with the constitutional Confrontation Clause. According to this Court's precedents, in cases such as Howlett and Randall, which are discussed in the briefs, when the procedures in question, the criminal trial procedures here, are parallel to those commonly employed in Anglo-Saxon society, and the rights in the Indian Civil Rights Act and the Constitution are the same, federal constitutional precedent is applied, the same standards are applied, to determine whether the rights have been violated. At the time of this trial, which was 2003, those federal constitutional standards were set by the Ohio v. Roberts case. But as a practical matter, hasn't this matter been waived in a most harmless error because he seemed to admit almost all of the accusations? Your Honor, I actually don't agree with that proposition. The district court did take that position. There's a couple of problems with that approach. First of all, we know from the complete record on this habeas corpus case that Mr. Alvarez actually didn't know what happened that night. If you look at the pre-sentence report, it's on page 186 of the record. The pre-sentence report writer asked, the probation officer asked Mr. Alvarez, and he said he really had no recollection of what happened. And then apparently he started discussing something about throwing bottles at people, which actually relates to something that happened a little over two weeks later. So when he said everything that the officer said is true, the first problem with treating that as a waiver or as disentitling him to habeas relief is that he really had no idea what happened. The second problem was he had the chance, didn't he, to cross-examine Bentley? He did. And he had the chance to cross-examine J.C.? He did, yes. And he had the chance to call witnesses? He did. And he called none? Correct. And in fact, on Bentley, which was the tough testimony, he said, well, I'm going to have to say that, you know, everything he says is true. Everything he says is true, yeah? That's what he said. Not, of course, not actually knowing whether it was true or not, because he had no recollection, but he also, when he said everything he says is true. Just a minute. Just a minute. You're suggesting then that based on the pre-sentence investigation report, I'm supposed to read that into what he said at the trial? I'm suggesting that in a habeas corpus case where this pre-sentence report was part of the record before the district court when it made its ruling, and the question under habeas corpus is whether it's just and consistent with his rights to let him continue to live with the consequences of this conviction. It's appropriate to consider the fact that what he said has to be considered against the backdrop of the fact that he really did not know. He had no recollection of what happened. But the other pertinent fact about what he said, everything he says would be true, is that everything Officer Benally said was simply recounting an out-of-court accusation that his girlfriend said. So literally when he says everything Benally says is true, all he's confirming the truth of is that his girlfriend made those accusations to Officer Benally. Well, I appreciate that's your argument. There is other evidence, as I understand as well, is there not, Counselor? There's evidence that the officer saw injuries. He saw injuries, yes. There's evidence that the ambulance responded to the injuries. Yes. And there's also J.C.'s testimony that corroborated the injuries. Yes. That evidence. So what we have is we do have evidence as to this particular situation. But in effect, what we really are trying to determine is, is there harmless error? That certainly is a pertinent factor, and harmlessness is an appropriate factor to consider. I mean, if we buy everything you say, we buy that 25 U.S.C. 13026 is the same as the Constitution, which the language is the same, and we buy that, therefore, he has certain rights, and those rights are outlined there. We're really at harmless error, and I guess I'm trying to figure out whether, in fact, given what we have here, there's harmless error or not. And what's my standard of review on that? The standard of review is the Katayako standard, whether the improperly admitted evidence had a substantial and injurious effect on the, usually we say verdict, this was a bench trial. Now, the way I understand it, it's a bench trial, and I guess that's why there's some worry to me about your argument. Well, I think it's useful to look to the Wilson v. Bowie decision, another bench trial, confrontation issue, factual circumstances very similar to this one. Harmlessness was raised and discussed by the Court in Wilson v. Bowie, and the way the Court, this Court, approached the question was to say, can we look at this record and say that this judge who made the fact-finding did not consider that testimony, that out-of-court testimony, that should not have come in? Now, you're really not challenging, if I understand it, you're really not challenging the proper use of the court processes here, are you, based on your brief? The court processes? Meaning the proper use of the processes, the right to trial to secure the appearance of witnesses? No. He was offered those processes, and he didn't make use of them. That's perfectly true. Of course, there wouldn't have been any. And as I understand, the witness was subpoenaed to appear, served with the documents, they just didn't appear? That's exactly right. Therefore, there's really no argument the community failed to follow its own procedures. Well, I think that you. I mean, I didn't read it in your brief. Well, what we argued in the brief and what I'm arguing here is that there were further procedures that could have been employed to try to get to avoid the confrontation violation. When Officer Benally was deposed, he said that a continuance or the issuance of a warrant for that witness could have been used, and he had seen that done, to try to get an out-of-court witness whose testimony is important into the court. For some reason, those procedures which were available were not employed here. Well, the procedures were that they would do what they needed to do to subpoena, that they were served with the documents. All of that happened. And I guess then you're saying something else had to happen? Did anybody request anything else happen? Nobody made the request. Judge Manuel testified, and he said it would have been up to the prosecution to make a request to take further efforts. But it doesn't matter anyhow, does it? I mean, the testimony came in through the brother. And the statement to the brother is covered by a hearsay exception as an excited utterance. So none of that matters anyway. I mean, whether the officer's testimony came in, I mean, whether her testimony came in through the officer, it doesn't matter. I mean, you've got the brothers essentially saying the same thing. So and there's no reasonable claim that that was a Confrontation Clause violation. The brother's testimony was as follows. She, referring to his sister, she said that inaudible, we can assume that's Mr. Alvarez, hit her, struck her in the head twice in the head with the flashlight, and she fell to the floor and he started to leave. Close quote. Now, if you just had that, you would not have enough to establish beyond a reasonable doubt that this was assault. All that establishes is that he hit her, nothing about whether there was provocation, whether it was defensive, whether it was accidental. So the brother is not the same as the Benally testimony. I would like to reserve the balance of my time. Okay. Thank you. May it please the Court. My name is Tom Murphy, and I represent the appellee respondent, Randy Tracy, in this case. This appeal from the dismissal of Mr. Alvarez's habeas petition raises three issues for the Court. First, as the Court indicated last week, whether there are subject matter jurisdiction over the claims. Second, whether the admission of the evidence violated Mr. Alvarez's ICRA Confrontation Clause rights. And third, whether he's entitled to relief for failure to request a jury trial. Counsel, on that first issue, we've had a chance to read the response by the Federal Defender dated April 9th. What's your view on jurisdiction? And Gifredo? Your Honor, we believe that Gifredo applies and that it was clear error for the lower court to find that the motion to dismiss for failure to exhaust tribal court remedies should be denied. The respondent believes that that motion should, in fact, have been granted. And if this Court reviews that decision for clear error, which would be the standard for subject matter jurisdiction. The district court said futility, said exhaustion must be said because of futility, and Gifredo does allow that. It's not a categorical rule. It says certain circumstances you don't have to exhaust, particularly if it's futile. So if we treat the futility determination by district courts as a finding, we review that for clear error, right? That's correct, Your Honor. So that hinges on whether we think the district court clearly erred in finding futility. That's correct, Your Honor. Okay. So what's your argument on that? Your Honor, I think the argument is a simple one. First, Mr. Alvarez never attempted to use any of the mechanisms that were specified in the record below that were available to him. That included commutation or filing a habeas proceeding in the tribal court. Second, none of these issues that were raised here were raised in the tribal court. And I think that the finding of futility by the district court was erroneous because it was based purely on a speculation that those remedies would be futile to use. I think the record clearly you're The defendant here, or at least the Petitioner here, apparently said that he didn't know he had the right to appeal. Do we take that into account? And where do we go to find out what the appeal rights actually were? I believe that the appeal rights are specified in the community's code. But I think the mechanisms that were identified in the motion to dismiss for failure to exhaust were the commutation mechanism that is available in the community's code as well as a habeas proceeding in the tribal court. And I think that the error that was committed in ruling on the habeas proceeding was that Judge Duncan, the magistrate, found that the habeas remedy wasn't specified in the tribal code. However, in the same order that was quoted, the community court judge indicated that the habeas remedy could not be passed upon because the Petitioner had not attempted that remedy. And we would note, Your Honor For lack of exhaustion? I believe there was lack of exhaustion. And habeas, if I understand it correctly, I think habeas originally was a common law remedy, not a statutory remedy. So I don't think the absence of a habeas remedy at the time in the community's code foreclosed the Petitioner from utilizing that, particularly in light of the fact that the community indicated to Mr. Alvarez that it would not object to his attempt to use the habeas remedy on the grounds that it was, in fact, unavailable. I don't understand what you just said. Was he advised of the right to appeal? Is there anything in the record saying that he was advised of this right? I mean, if you wanted to say, gee, what do I do? I've just gotten convicted. What do I do? Where would he have gone to find out that he, what his remedies were? How would you, would somebody tell him? Did the judge tell him? Judge Kaczynski, I would say that he was advised of the right. Just say yes or no. I mean, you know, it's a simple fact question, you know. And, you know, why do you have to make a speech? You know, the record is a record. And, you know, I can go look it up myself. I'm asking you. So, you know, you've got three words, answers you can give me. Yes, no, I don't know. If the I don't know is the answer, then we'll let you look it up. He was advised of his right to appeal. You think? That means you don't know? I think the record indicates that he was advised of his rights, and I think one of those was the right to appeal. I would go, I believe he was. Where would we find that in the record? I think that it may be in the advice of rights form that was attached to the affidavit. But I would go a step further and say that.  To what affidavit? The affidavit of Carlton Giff. It was attached to the I believe to the reply on the remaining claims that was filed by the Respondent. Who's Carlton Giff? He was the prosecutor in the tribal court, Your Honor. And he filed this affidavit where? This was an affidavit filed in the district court in support of the response that the Respondent made. But that wouldn't have been something that was filed in tribal court. Is there anything in the tribal court record that indicates he was advised of his right to appeal? I would have to review the record carefully to see if he was advised. So the answer is I don't know. I don't know, Your Honor. Okay. Let's say there isn't. Let's say you look carefully and there isn't anything there. Well, Your Honor. Well, what flows from that? I mean, I'm not sure there isn't, but let's say there isn't. I think the fact of the matter is he did not directly appeal his conviction. He was not. Well, no. I understand. But you don't think it matters whether he was told or not. So you've got a guy. He doesn't get a right to counsel. He doesn't have a lawyer. He doesn't get told that if he wants a jury, he has to ask for it. All right? There's nothing like that in the record. As to the right to counsel. I'm talking about the jury. He's not told, look, if you want a jury, you've got to ask for it. Correct. He was just advised he had the right to a jury. Your Honor, he was not told that he has to ask for a jury if he wants one. I mean, he has the right to remain silent, too, but you don't do anything about that. You don't have to say, gee, may I have my right to remain silent. That's correct, Your Honor. He was not advised that he had to ask for it. Okay. And let's say you look and you find that he is not advised of a right to an appeal. Does that bear on the jurisdictional question for us in terms of Fredo and the flexible standard? I don't believe it would be relevant, Your Honor. Where would he have found it? Let's say he's a really good lawyer and he says, okay, I want to find out. They didn't tell me what my right to appeal is, so I'm going to go and look it up. Where would he have looked it up and what would it have said? Is there a tribal code? There is a comprehensive tribal code, Your Honor. And does that contain a ñ what does it say about appeals? It does contain a right to appeal. Does it say how you exercise it? Yes. It contains appellate deadlines for filing, and my understanding is it's available to all the inmates at the detention facility. And this was the code that existed at the time of this proceeding? Yes. Do we have a copy? Excuse me, Your Honor. Where would I get it if I wanted to look at it? I think it's available currently upon request from various offices and departments within the community, and I think a copy is available at the jail. You don't have it in the record here. So if I wanted to sort of check and make sure that you're right when you tell me what it says, I don't have a copy, right? I don't know if it is ñ it was currently available on the Internet some time ago, Your Honor. I don't know if it is currently available. It's not in this record? It is not in this record. I don't think it's available in the record.   It's a process. And you're not going to give it to us, right? Yes, Your Honor. Would you do that? I will, Your Honor. I would go a step further, though, Your Honor, and say at the time that Mr. Alvarez did file his habeas petition in Federal court, he was represented by a licensed attorney in this case in the community court. And, again, we would emphasize that he had these remedies available to him, but did not opt to utilize or even try those remedies. Wasn't it too late by then? It was not. I don't think there's any time limit on the use of the commutation mechanism in the community court, Your Honor. Well, he did try commutation. He tried it on different grounds, and that is correct. And they said one of them considered commutation. So, I'm sorry. You're taking the position that commutation was a proper mechanism to use, but to use different grounds. I'm sorry. He could have raised these issues by way of commutation? Absolutely, he could have. Okay. So he tries commutation on different grounds, and they tell him we're not even going to consider it because you've got infractions. That's correct. So why isn't that established that commutation is futile? Why isn't the district court right when it says it's futile? He tried commutation. They said we won't even consider the mechanism because you've got. So why doesn't that support the district court's finding? It's not clear to find that it was futile. We would contend that the court would view it differently if the commutation was But which court is this? This is the community court. It's the trial court of the community. I mean, the question is not what the district court could have found. The question is why isn't that sufficient to support the finding the court did make, which is that it is futile. That's a finding of fact, and the facts supporting it are that he tried commutation on different grounds, and he said we won't even look at it. Why isn't that enough? It's like a jury finding, right? Your Honor, I would simply say because there's precedent in other cases allowing commutation to be used for post-conviction grounds, that out of a recognition of the tribe adjudicating these issues in the first instance, that the district court should have allowed the tribal court to adjudicate these and required Petitioner to at least attempt these mechanisms before filing a petition. And you refer to other cases. Are these tribal court cases, or are they Federal cases? What kind of cases are you talking about? There was a tribal court case, and there are portions of that case in the record here. It was Gila River Indian Community v. Rene Cannon, and that was the case that was used by both Petitioner and Respondent, but by the Respondent to demonstrate that post-conviction grounds had in fact been raised in commutation proceedings, had been considered, had been appealed to the community's court of appeals. I know this was raised particularly in this case, but I'm a little surprised that a government agency can imprison somebody for years, for at least a year, but several consecutive year-long sentences without giving him a lawyer. Gideon doesn't apply? It does not, Your Honor. Based on what? Based on the Indian Civil Rights Act, which are statutory rights extended to — it's actually — It's still imprisonment by a government agency within the authority of the United States, so why doesn't Gideon apply? Why doesn't he get a lawyer? You know, I understand for petty offenses it might not be. Why doesn't he get a jury trial? Why doesn't he get a lawyer? I mean, I've looked into this. There's a Ninth Circuit case a long time ago that says it, but it wasn't very convincing to me. Your Honor, Talton v. Mays in 1896, the Supreme Court held that the U.S. Constitution was not a constraint on Indian tribes. And the reason for the adoption of the Indian Civil Rights Act in 1968 was to essentially remedy the gap that was created by that case in extending certain rights to the tribes. These are statutory rights. Some are modeled off the Bill of Rights. Some are not. As the Court will note, the right to counsel provision indicates right to counsel at the expense of the defendant. I'd also note, Your Honor, that there was a lengthy sentence here, but that was actually three sentences in three separate cases that were handled together when the habeas petition was filed. All based on one incident, right? No, Your Honor. Actually, there were three cases. The case that raises the issues before the Court here was one incident involving two victims. There were two other cases that were the result of separate incidents, one, I think, occurring behind bars that are not before the Court. And I see my time is up. The Respondent would just ask the trial or the Court to affirm the trial court. Notwithstanding your doubts on jurisdiction? Well, Your Honor, I would say either affirm or to dismiss the one on jurisdiction. Okay. Now I understand. You just want to win, right? Mr. Alvarez actually was sentenced to five years in connection with one incident in this one case numbered 543. There were additional years that related to other cases and other incidents. But this was one trial, no counsel, no jury, five years, one incident. I'm sorry. These were five consecutive one-year sentences? The jurisdiction was one year, right? So what happened? There were five consecutive one-year sentences? Yes. So when counsel said one year, he wasn't quite right? I think – I don't recall the exact wording he used, but it was one year for individual counts stemming from one incident. There was a case that was in this Court. Okay. So that's right. So there were – I was right about that. There were multiple years for this one incident. That's exactly right. Okay. But were there five counts? I'm not quite sure I understand what you're telling us. Yes. So there were two victims, and then the fact of hitting the girlfriend was counted as assault, but also as domestic violence and also as threatening or intimidating or something else like that. And so an act of hitting someone can be – Totally there were five charges, and the sentence for conviction on all five charges was one year per charge to be served consecutively. Exactly. All right. And there was a case called Miranda v. Enchando. This Court held that under the old Indian Civil Rights Act, it was okay to stack one-year sentences up like that. There's a new legal framework since 2010 that regulates Indian court sentencing. The Court's question about – What's the current regime? Under the Tribal Law and Order Act, in order to sentence to more than one year in any criminal proceeding, there has to be counsel meeting the Sixth Amendment standard. There has to be a judge who has appropriate legal training. There has to be a published code that's available. And there has to be a record maintained of the proceedings. The Court's question about the right to appeal, the rights form appears on page 64 of the record. It does include, enumerated here, you have the right to appeal if you are found guilty within a period of five business days after sentencing. I would note that at no point in this entire proceeding has the tribe, has the community alleged that there was a failure to exhaust the right to appeal. The community did make arguments about failure to exhaust commutation procedure and a theoretical tribal habeas procedure. However, the ruling was against them in the district court, and for whatever reason, the community elected not to raise that argument in this appeal. That is a waived argument. Now, the problem we have is Gifredo, and the question is whether under Gifredo it is, in fact, waivable. If it were a determination of futility, that would be one thing. But if the right is there, the right was advised and never exercised, isn't there a serious issue as to lack of exhaustion? Well, Your Honor. Understanding it not having been raised. The tribal exhaustion doctrine as I understand it, including the way it's articulated in Gifredo, says that it's a flexible doctrine and it incorporates a balancing test and circumstances. So my understanding is that it's not jurisdictional in the same sense as something which would have no discretion involved in it. And in the Wood v. Milliard case, the Supreme Court decision 132 S. Court 1826, the court indicates that an exhaustion argument in a habeas case, if it has been waived, cannot be resurrected, so to speak, by a court of appeals. If it has been forfeited, it can be under extraordinary circumstances. This is a case where the community was clearly aware of these possible exhaustion arguments, consciously decided not to press them in this appeal. Well, some of them it didn't even press below. Those are waived arguments. I don't believe this Court has the power to, so to speak, resurrect them as objections to jurisdiction in this stage of litigation. Let me get back to the document on page 64. It's in the record here. How did this – when was this given to your client, or how is this presented? How is it in the record? I'm just wondering what this piece of paper is. So this rights form at the time, according to the depositions in the affidavit, it would be stapled to the complaint, and complaint with this stapled to it would be given to the defendant at the arraignment. And then at the beginning of the actual arraignment, the judge would basically read through these rights to a group of defendants awaiting arraignment. And then as the individual defendants came up, the judge would say, you heard me read the rights. Did you understand them? And there is some record of other cases involving Mr. Alvarez where that happened. It's assumed that that must have happened in 543, the particular case we're talking about here, although that piece of the recording for some reason wasn't in the transcript. So that's basically what is done. We did go through some – So that proceeding is recorded. When you say recorded, you mean audio recorded. It's tape recorded. It's not a court reporter kind of proceeding. Right. It's tape recorded. And when you say appended, what do you do, add a cassette? I mean, I'm just wondering how – if one wanted to listen to that record, how would one go about doing that? Well, the recordings you can get from the community court clerk's office, and that's what we did. And we just had court reporters transcribe the recordings by listening to them. But they're actually tape recordings. I don't know what the technology they use is. Are those transcriptions in this record somewhere? Yes. They're in the excerpts of record. So is there anything here indicating how this was presented to your client, this meaning the document on page 64? Well, yes. There is a deposition testimony saying that the practice at the time was to staple this or to attach this. So I understand that there was a practice, but sometimes the practices are not followed. I'm just wondering, is there anything in this record indicating actually having an evidence that what actually happened with respect to your client, either some court personnel saying, yes, I was there, this is what happened, or a court record indicating that rights were presented or a transcript of a hearing? You know, is there anything contemporaneous record, you know, something that indicates that these rights were, in fact, presented to your client? In this particular trial, in this particular case, the record doesn't show that he was read those particular – that he was read those rights. The testimony is that was the practice, but that is not in the recording that the clerk's office gave us. In other cases around the same time involving my client, for example, if you look at page 399 of the record, if this is a different case involving a different incident, you can see that the community court judge is reading through the rights, although he doesn't read all of them for whatever reason. He reads some of them, and then he says, any questions as to your rights to the entire group of defendants awaiting arraignment? There's no audible response. Then the judge goes on to say, okay, we'll begin with Fortino Alvarez. And then on the next page, page 400, around the middle, he says, at this time do you understand the rights that I read earlier? And Mr. Alvarez says, yeah. So we have evidence of how it was apparently done at the time. That's apparently how it was done at the time. And we don't have confirmation that that procedure was used in this particular trial that took place. And we don't know whether the partial, the list as read to him in this case, was full or partial, or if anything was omitted. What was omitted? We don't know. We know the one example we have, not all the rights were read. Exactly. That's true. And we know we went through the depositions with Benally and the judge who presided over his trial in this case, and were careful to ask a lot of questions to confirm that there would not have been advisements of rights going on outside of this procedure that takes place at arraignments. Benally said he'd never seen that. Judge Manuel said that would not happen. So there is reason to be confident that a further advisement into the waiver of rights or the substance of rights would not have taken place outside of the record. Your opposing counsel, Mr. Murphy, indicated that possibly the code might be obtainable on the Internet. What's your experience in trying to find the actual code? I don't know that the Keeler River Code is available on the Internet. We obtained copies of the code through the Tribal Defender Office, who obtained them from some kind of tribal office, as I understand it. The Tribal Defender Office doesn't get involved in these cases? They do in the tribal court. But they're not their charter, as I understand it, doesn't allow them to practice in federal court. But they weren't involved in his case below? In tribal court. I mean, he was charged with fairly serious stuff. So there is a Tribal Defender's Office? There is a Tribal Defender's Office. Now, my recollection is that at the time of this trial in 2003, there wasn't then. And so what happened was a tribal defender represented Mr. Alvarez in a case that came later and went back over these old court records and discovered some of the things that went on in his prior convictions, his prior cases. There's no right to counsel claim in this case? There's no right to counsel claim. That's correct. There was one previously, and that was rejected by the district court. We did not raise that in this appeal. Is that one of the rights in 1302? Yes. One of the rights in 1302, as it stood in 2003, was the right to counsel at your own expense. So that Congress decided not to require counsel to be appointed. Oh, there it is. It's 6. A-6. Yeah. At his own expense, have assistance of counsel. Right. Now, that again, that has changed with the Tribal Law and Order Act. Counsel must be appointed if there's going to be a sentence exceeding 1 year. Okay. If there are no further questions. Can I talk to him on the you don't get appointed counsel? It's not required under the Tribal Law and Order Act. And that's not a Gideon violation? Well, Mr. Murphy is correct in saying that since Talton v. Mays, it's been established that the constitutional protections that apply against the Federal government and against State governments through the Fourteenth Amendment do not apply against tribal governments, and that's the reason for the Indian Civil Rights Act. The whole point of it was Congress wanted to create constitutional-type protections for Indians in Indian courts. And that's confirmed in the Red Fox case, in the Randall case, et cetera. And that's based on Talton's 1896 case? Talton's 1896 case still frequently cited, and the proposition still stands today. Okay. Thank you. Thank you, Your Honors.  Case is argued. The case is submitted.
judges: Kozinski, O'scannlain, Smith